IN THE UNITED STATES DISCTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| RONALD CLARK, | : | |
| | : | Case No. 2:18-cv-157 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Deavers |
| PIZZA BAKER, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## OPINION & ORDER

This matter comes before the Court on Defendants' Motions to Dismiss.  Defendants Lisa M. Burkett and Precision Pizza LLC filed a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and for Lack of Jurisdiction to the extent It Seeks Declaratory Relief under Fed. R. Civ. P. 12(b)(1).  (ECF No. 24).  Defendants Christopher Baker and Pizza Baker, Inc. also filed for a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and for Lack of Jurisdiction to the extent It Seeks Declaratory Relief under Fed. R. Civ. P. 12(b)(1).  (ECF No. 26).  Defendants Domino's Pizza Franchising, LLC, Domino's Pizza, Inc., and Domino's Pizza, LLC filed a Motion to Dismiss, Motion to Strike, and Motion to Stay.  (ECF No. 31).  For the reasons set forth below, Defendants' Motions are **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND

### A.  Factual Background

Plaintiff Ronald Clark worked as a delivery driver and assistant manager at a Domino's Pizza in Cambridge, Ohio from January 14, 2014 to February 8, 2018.  (ECF No. 3 at ¶ 9).  The

particular Domino's at which Plaintiff worked was a franchise location. Pizza Baker, Inc. was the owner and operator of the store from the time Plaintiff began working there until December 31, 2017 at which point Precision Pizza LLC took over. Precision Pizza continues to operate the store at present. (*Id.* at ¶¶ 9, 10, 11).

Mr. Clark alleges that as a delivery driver, he was not adequately reimbursed for his expenses and was thereby not paid minimum wage. (*Id.* at ¶¶ 158, 159). Clark additionally alleges that the Domino's corporate defendants were his joint employer because of the requirements they imposed on franchisees that ultimately affected the working conditions of delivery drivers.

### B. Procedural Background

Mr. Clark sued three groups of Defendants on February 23, 2018: (1) Domino's Pizza, Inc., Domino's Pizza, LLC, and Domino's Pizza Franchising, LLC (the "Domino's Defendants"); (2) Precision Pizza LLC and its president and secretary, Lisa Burkett (the "Precision Defendants"); and (3) Pizza Baker, Inc. and its president, Christopher Baker (the "Baker Defendants"). (ECF No. 1). In his Amended Complaint, Mr. Clark brings class and nationwide collective action allegations against all Defendants for violations of the Fair Labor Standards Act ("FLSA"), Article II, Section 34a of the Ohio Constitution, the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4113.15 (Ohio's Prompt Pay Act), and O.R.C. § 2307.60. (ECF No. 3).

The Defendants filed three Motions to Dismiss. Defendants Lisa M. Burkett and Precision Pizza LLC filed a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and for Lack of Jurisdiction to the extent It Seeks Declaratory Relief. (ECF No. 24). These Defendants have asked for dismissal under Rule 12(b)(6) of all claims against Defendant Lisa Burkett and dismissal of Count 6 of the Amended Complaint (asking for criminal penalties under Ohio law for willfully violating the FLSA) as to all Precision Defendants and dismissal

under Rule 12(b)(1) for lack of subject matter jurisdiction to enter declaratory relief.  (ECF No. 24 at 1).  The Baker Defendants have asked for the same.  (ECF No. 26).

Defendants Domino's Pizza Franchising, LLC, Domino's Pizza, Inc., and Domino's Pizza, LLC filed a Motion to Dismiss, Motion to Strike, and Motion to Stay.  (ECF No. 31).  The Domino's Defendants have moved to "strike Plaintiff's class and collective allegations pertaining to delivery drivers at corporate-owned Domino's® stores or, in the alternative, stay those claims pending arbitration."  (ECF No. 31 at 1).  They also moved to "dismiss Plaintiffs' joint employer claims under Fed. R. Civ. P. 12(b)(6)" for failure "to specify which Domino's Defendant engaged in the actions" underlying the joint employer claim.  (*Id.*).  They have also moved to strike Plaintiff's definition of the Rule 23 class.  Additionally, they state the same motion to dismiss Count 6 and motion to dismiss declaratory relief as the Precision and Baker Defendants.

These motions are fully briefed and ripe for review.

## II.  STANDARD OF REVIEW

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005).  The Court must construe the complaint in the light most favorable to the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  If more than one inference may be drawn from an allegation, the Court must resolve the conflict in favor of the plaintiff.  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  The Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.*  The

Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.    LAW AND ANALYSIS

#### A.  Dismissal of Defendants Lisa M. Burkett and Christopher Baker

The Precision and Baker Defendants allege in almost identical responses that Plaintiff fails to state a claim upon which relief can be granted against Defendants Lisa M. Burkett and Christopher Baker, and thus such claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Thus, these motions will be considered together as 12(b)(6) motions to dismiss the individual Defendants.

Lisa Burkett is the President and Secretary of Precision Pizza LLC, and "Christopher Baker is the [P]resident of Pizza Baker, Inc." (ECF No. 3 at 5, 6). Plaintiff Clark alleges that Burkett and Baker are employers as defined in the FLSA, OMFWSA, and Section 34 of the Ohio Constitution. Plaintiff Clark rests his claims against Burkett and Baker on largely parallel factual allegations. As to Defendant Burkett, Plaintiff Clark alleges that, because Ms. Burkett was the President of Precision Pizza, she had control over the financial aspects and day-to-day operations, pay policies, personnel and payroll decisions, "power to stop any illegal pay

practices," and various other responsibilities.  Plaintiff Clark alleges that Baker, because he is the President, Founder, and Owner of Pizza Baker, had control over the same aspects of Pizza Baker as Ms. Burkett had over Precision Pizza.  (ECF No. 3 at 12–14).

Defendants argue that these factual allegations are conclusory and survive a Rule 12(b)(6) motion.  They allege that Plaintiffs' factual assertions against the individual Defendants are mere paraphrasing of the Sixth Circuit's test for when a corporate officer is considered an employer under the FLSA.

Plaintiffs have responded that alleging that Burkett is the president, manager, owner and founder of Precision Pizza and Defendant Baker is the president, founder, and owner of Pizza Baker are, without more, enough to survive the motion to dismiss.  (Response at 5–6).

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ."  29 U.S.C. § 203(d).  To determine whether an individual is an employer, courts look to the "economic reality" of the situation.  *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991).  A corporate officer may be an employer if the officer "has operational control for the corporation's covered enterprise."  *United States DOL v. Cole Enters.*, 62 F.3d 775, 778 (6th Cir. 1995).  The Sixth Circuit has previously held that "the chief executive officer of a corporation, [who] has a significant ownership interest in it, controls significant functions of the business, and determines salaries and makes hiring decisions has operational control and qualifies as an 'employer' for the purposes of FLSA."  *Id.*

Plaintiffs' allegations are sufficient to survive a motion to dismiss.  While being the Chief Executive Officer is not sufficient, without more, to qualify an individual as an employer, Plaintiffs have alleged other facts that, if true, would meet the test for who is an employer under the FLSA.  Specifically, Plaintiffs have alleged that, in addition to being the President, founder,

and owner of their respective pizza establishments, Defendants Burkett and Baker also had control over various operations of the business, including pay policies and personnel and payroll decisions.  (ECF No. 3 at 12–14).  While these facts alone do follow closely the Sixth Circuit's articulation in *Dole* and *Cole* of when a corporate executive is also an employer, that does not render the allegations mere legal conclusions unsupported by facts.

Courts within the Sixth Circuit have found similar factual allegations sufficient to survive a motion to dismiss on the issue of whether an individual is an employer.  *See, e.g.*, *Perkins v. S & E Flag Cars, LLC*, 2017 U.S. Dist. LEXIS 42592 (S.D. Ohio Mar. 22, 2017) (Sargus, J) ("Plaintiffs have alleged that the Bradens are officers of I & B, that the Bradens jointly employed Plaintiffs along with I & B and the other Defendants, and that the Bradens are responsible for I & B's day-to-day operation and management."); *Bey v. WalkerHealthCareIT, LLC*, 2018 U.S. Dist. LEXIS 72819 (S.D. Ohio May 1, 2018) (denying motion to dismiss where Plaintiffs alleged that Defendants were owners of the company, its CEO and Senior Managing Partner, and had "authority to hire, fire, set compensation for, and direct and supervise the work of employees[,] . . . make decisions regarding wage and hour classifications . . . [,] and . . . implement wage and hour policies").  Likewise here, Plaintiffs have alleged that Defendants Burkett and Baker had control over the operations of their respective franchises.  While most of the factual allegations against Burkett and Baker are pled as inferences based on their respective roles in the corporations, Plaintiffs have also alleged that Burkett is a member of Precision Pizza LLC, "controls significant aspects of Precision Pizza LLC's day-to-day functions, and ultimately controls compensation and reimbursement of employees."  (ECF No. 3 at 10).  Plaintiffs have alleged the same facts against Baker.

Defendants rely on *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009) and

*Nakahata v. New York-Presbyterian Healthcare System, Inc.*, No. 11-6658, 2012 WL 3886555

(S.D.N.Y. Sept. 6, 2012) for the proposition that such allegations are not sufficient to support a

claim that an individual is an employer for FLSA purposes.  These cases are not binding on this

Court and are contrary to district courts within the Sixth Circuit.  Additionally, these cases are

factually distinguishable from this case.  The Human Resources executive in *Tracy* was "the

chief human resources officer in an enormous, multi-billion dollar corporation scattered across

hundreds of miles." *Tracy*, 667 F. Supp. 2d at 247.  Here, Plaintiffs allege that Precision Pizza

LLC operates five Domino's stores in the Zanesville, Ohio area, that Pizza Baker operates 12

stores in the Cambridge, Ohio area, and that both Precision Pizza and Pizza Baker have gross

annual revenue of over $500,000.  (ECF No. 3 at 5–7).  While this is a far cry from being a one-

shop operation, it is not close to the level of a "multi-billion dollar corporation scattered across

hundreds of miles." *Tracy*, 667 F. Supp. 2d at 247.

Additionally, the connection between the individual defendants, the corporate defendants,

and the plaintiffs in *Nakahata* were far more tenuous than the connections here.  In *Nakahata*,

the Southern District of New York found that the Plaintiffs had not adequately alleged that even

the corporate defendants were employers under the FLSA.  If the corporate defendants cannot be

considered employers, it becomes much more difficult to allege that the officers controlling those

corporate entities somehow were the employers.  Here, however, Defendants have not moved to

dismiss the allegations that Precision Pizza and Pizza Baker employed Plaintiffs.  Defendants'

Motion to Dismiss the individual defendants is therefore **DENIED**.

### B.  Rule 12(b)(6) Motion to Dismiss Count 6

All three groups of Defendants have moved to dismiss Count 6 of Plaintiffs' Complaint. Count 6 is a request for compensatory and punitive damages under O.R.C. § 2307.60.  (ECF No. 3 at 44).  Section 2307.60 allows for civil damages for injury to "person or property by a criminal act."  O.R.C. § 2307.60 (A)(1).  Punitive damages are not automatic under this statute but rather must be authorized under a separate provision of the Ohio Revised Code.  Plaintiffs base their claim on the criminal penalties that are available for willful violations of the FLSA. (ECF No. 3 at 44).

The Precision and Baker Defendants argue that damages under O.R.C. § 2307.60 requires an underlying criminal conviction.  (ECF No. 24 at 8; ECF No. 26 at 8–9).  The Domino's Defendants have joined this argument.  (ECF No. 31 at 19).  The Plaintiffs dispute that a criminal conviction is required, arguing that the Ohio Supreme Court's decision in *Jacobsen v. Kaforey*, 149 Ohio St.3d 398, 75 N.E.3d 203 (2016) changed that requirement.

Whether O.R.C. § 2307.60 requires a criminal conviction is unclear.  *Jacobsen v. Kaforey* does not resolve the issue.  There, the Ohio Supreme Court merely stated "that O.R.C. § 2307.60 independently authorizes a civil action for damages caused by criminal acts."  The Northern District of Ohio certified the exact question of whether O.R.C. § 2307.60 requires a criminal conviction to the Ohio Supreme Court, and the Ohio Supreme Court accepted the question for review.  *Buddenberg v. Weisdack*, Case No. 1:18-cv-00522, 2018 U.S. Dist. LEXIS 139850, at *2–*5 (N.D. Ohio Aug. 17, 2018); 10/24/2018 Case Announcements, 2018-Ohio-4288, Ohio S.Ct. case No. 2018-1209, https://supremecourt.ohio.gov/rod/docs/pdf/0/2018/2018-ohio-4288.pdf.

This Court held a status conference on February 19, 2019, to advise the parties of *Buddenberg*.  The Plaintiffs noted that they would be opposed to a stay, and Defendants supported a stay.  When the Ohio Supreme Court will issue a decision in *Buddenberg* cannot be known.  In the meantime, Plaintiffs' claims are subject to statute of limitations issues.  The merits of the claims can be decided without regard to the damages.  Therefore, this Court declines to stay the case pending the Ohio Supreme Court's decision.

Because the Ohio Supreme Court will provide a definitive answer to this question, Defendants' Motion to Dismiss Count 6 of the Complaint is **DENIED.**  Should the Ohio Supreme Court decide that a criminal conviction is required, Defendants may renew their Motion to Dismiss at that time.

### C.  Rule 12(b)(1) Motion to Dismiss Claim for Declaratory Relief

The three groups of Defendants have moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) the Plaintiff's claim for declaratory relief.  They argue that because the Plaintiff no longer works for the Defendants, he presents no possible injury in fact that is concrete and particularized, actual, and imminent as required under the Supreme Court's standing doctrine.  Thus, they argue, he lacks standing, and this Court lacks jurisdiction.  (ECF No. 24 at 9–10, ECF No. 26 at 9–10, ECF No. 31 at 19).

Plaintiff does not have standing to seek declaratory relief.  A plaintiff alleging only "[p]ast exposure to illegal conduct does not" have a claim for "a present case or controversy regarding injunctive relief."  *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974).

The Plaintiff's only response to the Precision and Bakers Defendants' argument is that such argument "may have merit."  (ECF No. 44 at 2 n.2).  Plaintiffs have thus suggested they will dismiss the declaratory relief claim and "refile it when a current employee opts into the

lawsuit." (*Id.*). Plaintiff, however, has failed to follow-through with his own suggestion. Therefore, this Court dismisses without prejudice Plaintiff's claim for declaratory relief against the Precision and Baker Defendants. The Precision and Baker Defendants' Motion to Dismiss the claim for declaratory relief is hereby **GRANTED.**

As to the Domino's Defendants, Plaintiff has alleged that a current employee of Domino's has joined the lawsuit and therefore the declaratory relief claim against the Domino's Defendants can proceed. (ECF No. 54 at 12). Domino's Reply argues that the declaratory relief claim still must fail because the facts regarding the alleged current employee are not contained in the Complaint.

The presence of an opt-in plaintiff who is allegedly a current employee does not change the analysis as to the Domino's Defendants. If the named plaintiff in an FLSA collective action, particularly before a collective action is even conditionally certified, ceases to have a claim, the entire suit becomes moot. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 78–79 (2013) (holding that, assuming the named plaintiff's claim in an FLSA case was moot, the named plaintiff "has no personal interest in representing putative, unnamed claimants, nor any other continuing interest that would preserve her suit from mootness."). Although here, the allegedly current employee has filed a consent to join form, the relevant inquiry remains the named plaintiff's standing to assert the claim. *See Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)) (noting that class status does not change "the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"). Several district courts have noted the impermissibility of a named

plaintiff asserting a claim for injunctive relief on behalf of a class where the named plaintiff is

not a current employee. *See, e.g.*, *Brown v. Royal Caribbean Cruises, Ltd.*, Nos. 99-ICIV.2435,

99CIV.11774KMW, 2000 WL 34449703, at *6 (S.D.N.Y. Aug. 24, 2000) (denying motion to

dismiss for lack of standing where complaint alleged that named plaintiff was current employee

but granting leave to refile if evidence showed otherwise); *Hirst v. Skywest, Inc.*, No. 15 C

02036, 2016 WL 2986978, at *14 (N.D. Ill. May 24, 2016) ("[C]ourts in this district regularly

dismiss putative class actions on standing grounds where the named plaintiffs were former

employees seeking to obtain injunctive and equitable relief on behalf of current employees.").

Although these cases dealt with standing on behalf of a class, rather than collective, action, this

Court sees no reason to depart from their reasoning.  Thus, the Domino's Defendants' Motion to

Dismiss the claim for declaratory relief is hereby **GRANTED.**

### D.  Domino's Defendants' Motion to Strike or Stay

The Domino's Defendants have raised additional defenses based on the franchisor-

franchisee relationship that Dominos had with the Baker and Precision Defendants.  The

Domino's Defendants' argument is two-fold.  First, the Domino's Defendants argue that Clark

cannot represent a class against Dominos because he was not employed directly by Domino's.

Domino's drivers almost invariably had arbitration agreements, and Clark does not have the

same interests as those drivers with arbitration agreements.  (ECF No. 31 at 8).  Second, the

Domino's Defendants argue in the alternative that, should this Court allow Clark's class

allegations to stand, it should stay the claims of those drivers who worked for the Domino's

Defendants pending arbitration.  (ECF No. 31 at 10).  Clark argues that the Domino's

Defendants' request to strike or stay is premature because no drivers who worked for Domino's

corporate have joined the suit.  (ECF No. 54 at 4).  Domino's counters that it is permissible to

inquire into whether a named plaintiff can represent other plaintiffs in a class or collective action "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Geary v. Green Tree Servicing, LLC*, No. 2:14-cv-00522, 2015 WL 1286347, at *15 (S.D. Ohio Mar. 20, 2015) (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.R.D. 242, 244 (S.D. Ohio Dec. 4, 2017)).

A defendant may move to strike class allegations "prior to a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Geary*, 2015 WL 1286347, at *16 (citing *Pilgrim* 660 F.3d at 949).  For example, the Sixth Circuit in *Pilgrim* upheld the striking of class allegations where plaintiffs sought to represent a nationwide class that would necessarily require determinations under the laws of several different states. *Pilgrim*, 660 F.3d at 948–49.  There, the Sixth Circuit determined that this dissimilarity was a legal determination—the application of the laws of different states—and that "no proffered or potential factual development offers any hope of altering that conclusion." *Pilgrim*, 660 F.3d at 949.  Nevertheless, an early motion to strike class allegations "does not free the district court from the duty of engaging in a 'rigorous analysis' of the question, and 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *Pilgrim*, 660 F.3d at 949 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)).  Here, this Court finds the question of individual arbitration agreements does not require striking the collective action allegations.[1]

---

[1] The Domino's Defendants' Motion refers to Clark's ability to represent a class.  Clark, however, has represented that he does not seek a nationwide class but rather seeks a nationwide collective action under the FLSA.  Thus, this Court will not address the requirements for class representatives under Rule 23.

As an initial matter, Domino's Motion to Strike fails because the inquiry in deciding whether to strike class, or collective action, allegations is whether "the complaint itself demonstrates that the requirements for maintaining a [collective] action cannot be met." *Geary*, 2015 WL 1286347, at *16 (citing *Pilgrim* 660 F.3d at 949). The inquiry thus must focus on the Complaint. Whether to strike collective allegations cannot be decided without first examining the requirements for collective action certification under the FLSA.

Certification of FLSA collective actions typically proceeds in two steps: "The first takes place at the beginning of discovery. The second occurs after 'all of the opt-in forms have been received and discovery has concluded.'" *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (quoting *Goldman v. RadioShack Corp.*, 2003 WL 21250571, at *6 (E.D. Pa. Apr. 17, 2003)). At the first stage, "certification is conditional." *Comer*, 454 F.3d at 546 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). Courts deciding to conditionally certify a class apply "a fairly lenient standard" and conditional certification is usually granted. *Comer*, 454 F.3d at 547 (quoting *Morisky v. Public Service Elec. and Gas Co.*, 111 F.Supp.2d 493, 497 (D.N.J. 2000). Plaintiffs are similarly situated for FLSA purposes "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *rev'd on other grounds sub nom. Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016). But courts often consider "employment settings, individual defenses, and the fairness and procedural impact of certification." *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 672 (6th Cir. 2012) (citing *O'Brien*, 575 F.3d at 584).

Typically, a district court must rule upon a motion to compel arbitration against a *named* plaintiff prior to ruling on the issue of conditional certification.  *See, e.g.*, *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 377–78 (5th Cir. 2016) (holding that district court must address motion to compel arbitration against named plaintiff prior to motion to conditionally certify); *Taylor v. Pilot Corp.*, 697 F. App'x 854, 861 n.3 (6th Cir. 2017) (suggesting that if the named plaintiff or "those who have joined her thus far ha[d] agreed to arbitrate," the reasoning of *Reyna* would apply and the defendant could have sought to compel arbitration).  It is less clear whether the presence of an arbitration agreement between defendants and potential plaintiffs, who have yet to opt-in to the suit, can form the basis of a motion to strike collective action allegations.

Several courts have found that the presence of arbitration agreements does not defeat a motion for conditional certification.  *See, e.g.*, *Meyer v. Panera Bread Co.*, 344 F.Supp.3d 193, 206–07 (D.D.C. 2018) (collecting cases) ("[C]ourts have generally found that the existence of an arbitration agreement is irrelevant to conditional certification of a collective action, because the enforceability of such agreements is a merits-based determination better dealt with at the decertification stage."); *Bigger v. Facebook, Inc.*, 375 F.Supp.3d 1007, 1022–23 (N.D. Ill. 2019) (granting motion for conditional certification despite defendant's argument that arbitration agreements barred many plaintiffs' claims); *Colley v. Scherzinger Corp.*, 176 F.Supp.3d 730, 735 (S.D. Ohio Apr. 6, 2016) (declining to exclude employees alleged to have arbitration agreements at conditional certification stage because to do so "assumes that the arbitration agreements are fully valid and binding on those employees, an issue that the Court has not addressed").  The Fifth Circuit is the only federal circuit to have directly addressed the issue directly and has held that "[w]here a preponderance of the evidence shows that the employee has entered into a valid arbitration agreement, it is error for a district court to order notice to be sent to that employee as

14

part of any sort of certification." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 503 (5th Cir. 2019).  One court in the Sixth Circuit has relied on *In re JPMorgan Chase & Co.* to find "that the 100 employees who are bound to arbitrate may not receive notice of conditional certification if this Court grants it." *Lea Graham v. Word Enters. Perry, LLC*, No. 18-cv-10167, 2019 WL 2959169, at *5 (E.D. Mich. June 18, 2019)

This Court is more persuaded as to the merits of the approach taken in *Bigger v. Facebook* than that taken in *In re JPMorgan Chase & Co.*, at least when ruling on a Motion to Strike or Stay and finds that *Taylor* suggests that the Sixth Circuit would be disinclined to follow the Fifth Circuit's approach.  Typically, the presence of an arbitration agreement is considered premature even at the conditional certification stage, let alone at the Motion to Dismiss stage. Thus, it is premature to grant a Motion to Strike or Stay based on arbitration agreements with plaintiffs who have yet to join the suit.

Although *Taylor* is not on all-fours with this case, Domino's attempts to distinguish *Taylor* are unpersuasive.  Defendants argue that *Taylor v. Pilot Corp.* is inapposite for three reasons: (1) the arbitration agreements here contain a delegation clause, delegating challenges to the arbitration agreement to an arbitrator; (2) a far greater percentage of employees signed arbitration agreements here than in *Taylor*; and (3) the stay requested here is far more limited in scope than the stay requested in *Taylor*.  (ECF No. 57 at 11–13).  But even though the arbitration agreements may contain a delegation clause, as this Court has examined before, delegation clauses are still subject to challenge.  *See De Angelis v. Nolan Enters., Inc.*, No. 2:17-cv-926, 2018 WL 4566280, at *3 (S.D. Ohio Sept. 24, 2018).  And, the named plaintiffs here, because not subject to arbitration agreements, do not have standing to challenge the agreements that allegedly apply.  *See In re Checking Account Overdraft Litigation*, 780 F.3d 1031, 1039 (11th

Cir. 2015) (holding that "the named plaintiffs lack standing to assert any rights the unnamed putative class members might have" to defend against a motion to compel arbitration). Additionally, Domino's has relied on *Kessler v. Lifesafer Service Providers, LLC*, No. 6:06–CV–1442–ORL–19JGG, 2007 WL 1531395, at *3 (M.D. Fla. May 25, 2007) to say that a small number of plaintiffs, in *Kessler*, a class of ten people, could be insufficient to conditionally certify a class. Courts within the Sixth Circuit, however, have conditionally certified a class with far fewer than ten plaintiffs. *See, e.g*, *Wagoner v. U.S. Bancorp*, 110 F.Supp.3d 759, 767 (N.D. Ohio 2015) (conditionally certifying collective action based on "the declarations of the two named plaintiffs and the three potential opt-in plaintiffs); *Myers v. Marietta Mem'l Hosp.*, 201 F.Supp.3d 884, 892 (S.D. Ohio 2016) ("[T]here is no threshold requirement for a certain number of affidavits from employees to certify conditionally a collective action."). Any challenge to the sufficiency of the number of plaintiffs in a collective action is better reserved for the conditional certification or final certification stage. Finally, although Domino's is asking for a stay more limited in scope than that requested in *Taylor*, the fact remains that "[w]hen [defendant] requested a stay, no plaintiff in the litigation had a claim—or an issue in a claim—referable to arbitration. Some opt-in plaintiffs possibly will. But until they join this action, [defendant] lacks any entitlement to a stay under the FAA." *Taylor v. Pilot Corp.*, 697 F. App'x at 860. So too here. As the Sixth Circuit noted in *Taylor*, "a 'conditional certification' under the FLSA 'does not produce a class with an independent legal status, or join additional parties to the action.'" *Taylor*, 697 F. App'x at 860. Thus, Domino's cannot presume to know that plaintiffs with arbitration agreements will ultimately opt in to the suit. Thus, a stay is also premature.

Similarly, Clark has asked this Court not to consider Domino's attached Declarations and Arbitration documents. Domino's argues that the attached documents pertain to Domino's

motion to stay pending arbitration and thus can be considered in ruling on the request to stay. Defendants appear to make their motion to strike under Federal Rule of Civil Procedure 12(f). (ECF No. 31 at 8). In deciding a motion to strike under Rule 12(f), "matters outside the pleadings are not to be considered." *Keefer v. Wiles, Boyle, Burkholder & Bringardner, Co., LPA*, Nos. 2:07-cv-1205, 2:07-cv-1288, 2008 WL 4404295, at *1 (S.D. Ohio Sept. 23, 2008). This Court declines to consider the Domino's Defendants attachments to their Motion to Dismiss for purposes of evaluating whether to strike the class allegations. Because this Court finds that such an argument is premature at this stage, it will not consider the attached documents in ruling on the Motion to Stay.

Domino's Motion to Strike or Stay the class allegations related to delivery drivers for Domino's corporate is hereby **DENIED**.

### E. Domino's Defendants' Rule 12(b)(6) Motion to Dismiss Joint Employer Claims

The Domino's Defendants have also moved to dismiss Clark's joint employer claims because Clark has not alleged specific behavior on behalf of each individual Domino's Defendant that makes each a joint employer.

Clark's Complaint defines "Domino's" as including all three Domino's Defendants: Domino's Pizza, Inc.; Domino's Pizza, LLC; and Domino's Pizza Franchising. (ECF No. 3 at ¶ 1). Clark has made allegations against each individual Domino's Defendant. Clark alleges that each Domino's Defendant is an FLSA employer of delivery drivers; that each Defendant "applies or causes to be applied substantially the same employment policies, practices, and procedures to all Domino's delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, overtime wages, and reimbursement of automobile expenses"; and that each Defendant "maintained control, oversight, and direction

over Domino's delivery drivers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, and other practices."  (ECF No. 3 at ¶¶ 54–56 ,60–63, 67–70).  As for Domino's Pizza, LLC and Domino's Pizza Franchising, LLC, Clark additionally alleged that both are the "wholly owned subsidiary of Domino's Pizza, Inc."  (ECF No. 3 at ¶¶ 60, 67).

In addition to these allegations, Clark has included a section in his Complaint entitled "Joint Employer Allegations" that includes significantly more detailed allegations.  Among other things, that section of the Complaint alleges that Domino's requires franchisees to use the PULSE system "for recording employees' worktime using individual employee codes, tracking employee work tasks continuously, recording tips, tracking pizza delivery information, maintaining personnel data, monitoring store hours and product prices, and generating sales, revenue, and payroll reports."  (ECF No. 3 at ¶ 173).

Domino's does not contend that Clark's allegations are insufficient to support a claim for joint employer status.  Domino's argues only that Clark is required to make specific allegations against each individual Domino's employer.  Clark responds that he has made such allegations because he defined "Domino's" as including all three Domino's entities.

At the motion to dismiss stage, this Court is bound to take all of a plaintiff's facts as true, and, where "an allegation is capable of several inferences, the allegation must be construed in a light most favorable for the plaintiff."  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  Clark has defined "Domino's" to include all three Domino's entities named as Defendants in this action.  Thus, taking all facts and inferences as true, Clark alleges that each Domino's Defendant took the alleged actions.  To accept the Domino's Defendants' argument would be to cast doubt on the plausibility of Clark's factual allegations—in other words, to suggest that it is somehow

18

implausible that each Domino's entity could have taken the alleged actions.  That impermissibly tests "the plaintiff's factual allegations" rather than the "plaintiff's cause of action."  *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005).  The Domino's Defendants have not argued that the alleged facts are insufficient as a matter of law to support a finding that the Domino's Defendants are joint employers.

The Domino's Defendants have cited no Sixth Circuit authority, and this Court has located none, prohibiting a plaintiff from grouping together several defendants and alleging that all of them took the same action.  In fact, one district court in the Sixth Circuit found that because "[p]laintiffs d[id] not distinguish between the [d]efendants, but allege[d] all [d]efendants engaged in the [] acts and violated the FLSA and Ohio wage laws by knowingly, willfully and/or recklessly failing to pay overtime and minimum wages to [p]laintiffs" those "[p]laintiffs clearly contend [d]efendants acted in concert with the intent to deny [p]laintiffs their statutory rights to overtime." *Townsend v. Stand Up Mfg., Inc.*, No. 1:18CV2884, 2019 WL 3729266, at *8 (N.D. Ohio Aug. 8, 2019).  Another court recently found that "[p]laintiffs do not need to plead detailed factual allegations about Defendants' employment arrangements," and inferred, through the pleading of contractual relationships "that through this arrangement, [the defendant] indirectly controlled or supervised [p]laintiffs." *Ali v. Piron, LLC*, No. 17-cv-11012, 2018 WL 1185271, at *5 (E.D. Mich. Mar. 7, 2018).  One district court within the Sixth Circuit has even found that, in the fraud context which requires allegations to be pled with particularity, it was sufficient to refer to two subsidiaries by the same name where they were subsidiaries of the same company and the complaint alleged that "employees and constituent entities often blur the legal boundaries between [the] subsidiaries." *In re Duramax Diesel Litigation*, 298 F.Supp.3d 1037, 1056 (E.D. Mich. 2018).  Although Clark does not allege blurring of the legal distinction between the

Domino's entities, if such allegations are sufficient to meet the higher fraud pleading standard, they should be sufficient under Rule 8.

The Domino's Defendants rely on several district court opinions from outside the Sixth Circuit that are unpersuasive for several reasons. For example, Defendants rely on *Freeney v. Bank of Am. Corp.*, No. CV 15-02376 MMM (PJWx), 2015 WL 4366439, at *18 (C.D. Cal. July 16, 2015). On first glance, *Freeney* appears to address this exact issue and conclude that "a plaintiff seeking to hold multiple entities liable as joint employers must plead specific facts that explain how the defendants are related and how the conduct underlying the claims is attributable to each." *Id.* But a closer look at the pleadings in *Freeney* reveals that, there, the court was essentially examining the sufficiency of the factual allegations for pleading that a defendant is a joint employer. As the *Freeney* court explained, alleging that the defendant "owned, managed and oversaw, appointed directors, co-marketed, administered benefit plans for, and was generally interdependent with" another defendant was "insufficient because general facts concerning [one defendant's] relationship with [another] do not indicate whether it controlled the specific individuals whose conduct is at issue here." *Id.* Defendants have also relied on *E.E.O.C. v. Am. Laser Ctrs. LLC*, No. 1:09–CV–2247–AWI–DLB, 2010 WL 3220316, at *5 (E.D. Cal. Aug. 13, 2010). But there, the court reasoned that the complaint was insufficient because it alleged "that the conduct at issue is attributable to all Defendants because each acted 'as a successor, alter ego, joint employer, integrated enterprise, agent, employee . . . .' or 'under the direction and control of the others'" and that such "conclusory allegation[s]" could not support "attribut[ing] conduct to all Defendants." *Id.* Here, however, Clark has set forth detailed factual allegations supporting his claim of joint employer status and alleged that such facts apply to all Domino's Defendants.

It is likewise notable that the Domino's Defendants have cited to cases applying Ninth Circuit and Second Circuit law. *See, e.g.*, *Freeney, Am.Laser; Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, Nos. 10 Civ. 2661(PAC), 10 Civ. 2662(PAC), 10 Civ. 2683(PAC), 10 Civ. 3247 (PAC), 2011 WL 321186, at *4 (S.D.N.Y. Jan. 28, 2011). The Second and Ninth Circuits, along with the First and Third, require a heightened pleading standard for at least some portions of an FLSA claim, namely, "that a plaintiff must allege a given workweek in which he worked over 40 hours," that the Sixth Circuit has not adopted. *Maclin v. Reliable Reports of Texas, Inc.*, 314 F.Supp.3d 845, 851 (N.D. Ohio 2018). The Southern District of New York in *Nakahata* found the complaint deficient, in part, because it "fail[ed] to specify which entity, among the many named defendants, employed the respective plaintiffs." *Nakahata*, 2011 WL 321186, at *4, but it did so after stating the heightened pleading standard; that the complaint "[a]t a minimum, [] must set forth the approximate number of unpaid regular and overtime hours allegedly worked." *Id.* Clark's complaint here "does not sound like a case where the defendant is in the dark and has no notice of the state and federal overtime claims against it." *Maclin*, 314 F.Supp. 3d at 852.

Clark has argued in his Response, however, that the "Domino's Defendants are part of a *single enterprise*." (ECF No. 54 at 8). But Clark's complaint contains no mention of the Domino's Defendants being a single enterprise. To the extent that Clark wishes to so allege, he will need to amend his complaint to add such allegations.

### F.  Domino's Defendants' Motion to Strike Definition of Rule 23 Class

The Domino's Defendants have moved to strike the definition of the Rule 23 class because, as currently proposed, the class seeks relief under Ohio law on behalf of individuals who were employed outside the state of Ohio. (ECF No. 31 at 18–19). Clark argues that he

intends to limit the class to individuals who were employed in Ohio but admits that the plain language of his Amended Complaint does not include that limitation.  (ECF No. 54 at 3–4).  Clark argues that, although the definition of the class does not expressly limit membership to those employed in Ohio, such limitation should be implied from the remainder of the Amended Complaint.  The limitation of the Rule 23 class to Ohio employees can then be handled at class certification.

Courts construe complaints "liberally in order to prevent errors in draftsmanship from barring justice to litigants."  *Ritchie v. United Mine Workers of Am.*, 410 F.2d 827, 833 (6th Cir. 1969).  At times, "where language in a complaint is ambiguous [the Sixth Circuit] has used a 'course of the proceedings test' to determine whether defendants have received notice of the plaintiff's claims."  *Carter v. Ford Motor Co.*, 561 F.3d 562, 566 (6th Cir. 2009).  Under the course of proceedings test, plaintiffs have been permitted to add claims not included in the Complaint where both sides later evidenced an understanding that those claims were part of a plaintiff's action.  *See, e.g.*, *Cummings v. City of Akron*, 418 F.3d 676, 681 (6th Cir. 2005) (allowing a Fourth Amendment claim when Complaint only alleged Fourteenth Amendment and § 1983 claims where "both sides understand [the] suit to encompass Fourth Amendment claims").

Here, Clark's Amended Complaint is ambiguous, but Clark now represents that he intends to limit his Rule 23 class in the way that Domino's has suggested.  This provides adequate notice to Domino's of Clark's claims and can be adequately addressed at the class certification stage.  Domino's Motion to Strike is hereby **DENIED.**

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are **GRANTED IN PART and DENIED IN PART.**  Defendants' Motion to Dismiss the Clark's claim for declaratory relief is hereby **GRANTED.**  In all other respects, Defendants' Motions are **DENIED.**

**IT IS SO ORDERED.**


<u>**s/Algenon L. Marbley**</u>
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 23, 2019**