IN THE UNITED STATES DISCTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RONALD CLARK, | : |
| Plaintiff, | : Case No. 2:18-cv-157 |
| v. | : CHIEF JUDGE ALGENON L. MARBLEY |
| PIZZA BAKER, INC., *et al.*, | : Chief Magistrate Judge Deavers |
| Defendants. | : |

**OPINION & ORDER**

This matter comes before the Court on Defendants' Motions to Dismiss Count VII of Plaintiff's Second Amended Complaint. (ECF Nos. 140, 141, 142). For the reasons set forth below, Defendants' Motions are **DENIED.**

**I.   BACKGROUND**

**A.  Factual Background**

Plaintiff Ronald Clark and similarly situated employees worked as delivery drivers at Domino's Pizza franchise locations in Ohio. (ECF No. 137 at ¶ 2). Pizza Baker, Inc. was the owner and operator of the store at which Mr. Clark worked from January 14, 2014, until December 31, 2018, at which point Precision Pizza LLC took over. (*Id*. at ¶¶ 16, 29, 30).

Plaintiffs allege that as delivery drivers, they were often paid below minimum wage and were required to provide their own vehicles and were not adequately reimbursed for their vehicle expenses or mileage rates. (*Id.* at ¶ 5). Plaintiffs allege that the Domino's corporate defendants were joint employers because of the requirements they imposed on franchisees that ultimately affected the working conditions of delivery drivers. (*Id.* at ¶¶ 20-22, 31-33).

1

## B. Procedural Background

Mr. Clark sued three groups of Defendants on February 23, 2018: (1) Domino's Pizza, Inc., Domino's Pizza, LLC, and Domino's Pizza Franchising, LLC (the "Domino's Defendants"); (2) Precision Pizza LLC and its president and secretary, Lisa Burkett (the "Precision Defendants"); and (3) Pizza Baker, Inc. and its president, Christopher Baker (the "Baker Defendants"). (ECF No. 1). On February 27, 2018, Mr. Clark filed an Amended Complaint, in which he brought class and nationwide collective action allegations against all Defendants for violations of the Fair Labor Standards Act ("FLSA"), Article II, Section 34a of the Ohio Constitution, the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4113.15 (Ohio's Prompt Pay Act), and O.R.C. § 2307.60. (ECF No. 3).

The Defendants filed three Motions to Dismiss in April 2018. The Precision and Baker Defendants filed Motions to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and for Lack of Jurisdiction to the extent It Seeks Declaratory Relief. (ECF Nos. 24, 26). The Domino's Defendants filed a Motion to Dismiss, Motion to Strike, and Motion to Stay. (ECF No. 31). This Court Granted in Part and Denied in Part Defendants' Motions on September 23, 2019. (ECF No. 99). The Court granted the motion to dismiss the claim for declaratory relief and denied the remainder of Defendants' claims. (*Id.*).

On October 2, 2019, Plaintiff filed a Motion for Conditional Certification (ECF No. 106), which the Magistrate Judge stayed pending resolution of discovery matters related to the joint employer issue. (ECF No. 122). On April 13, 2020, Magistrate Judge Deavers granted Plaintiff's Motion to File a Second Amended Complaint. (ECF Nos. 136, 137). In the Second Amended Complaint, Plaintiff reiterated his claims under the FLSA, the Ohio Constitution, Ohio's Prompt Pay Act, and O.R.C. § 2307.60, and added a claim for unjust enrichment. (ECF No. 137 at ¶ 1).

The Domino's Defendants filed this Motion to Dismiss Count VII of the Second Amended Complaint—the unjust enrichment claim—on May 13, 2020. (ECF Nos. 140). The Baker Defendants and Precision Defendants each filed Motions to Dismiss "adopt[ing] and incoporat[ing] by reference the grounds for dismissal set forth in Section II.B of the Domino's Defendants Motion to Dismiss." (ECF Nos. 141, 142). Plaintiff filed a Response in Opposition on June 3 (ECF No. 144) and Defendants filed Replies on July 17 (ECF Nos. 146, 147, 148). Defendants' Motions to Dismiss are now ripe for review.

## II.  STANDARD OF REVIEW

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). The Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, the Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550

3

U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. LAW AND ANALYSIS

In order to make out a claim for unjust enrichment, a plaintiff must show: "'(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment').'" *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013) (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio S. Ct. 1984)). For the reasons set forth below, the Court finds Plaintiff has made sufficient allegations to support each of the three elements of his unjust enrichment claim.

#### A. Benefit conferred and Defendants' Knowledge

Under the first and second steps, Plaintiff must allege he conferred a benefit on Defendants and that Defendants had knowledge of the benefit. Count VII of Plaintiff's Second Amended Complaint alleges Plaintiffs have provided and maintained "tools of the trade" for Defendants' benefit by using their own vehicles, insurance, and cell phones, for which they were not compensated or were under-compensated. (ECF No. 137 at ¶¶ 360, 361, 365). They allege Defendants retained a benefit by receiving "direct and indirect financial benefits like increased profits, increased ability to compete on the price of Defendants' products, and increased attractiveness of Domino's franchise opportunities." (*Id.* at ¶ 364).

Defendants do not dispute that they retained a benefit or that they had knowledge of such benefit. Rather, the Domino's Defendants argue that the benefit must be the result of a direct

4

economic transaction between the parties, which Defendants allege Plaintiff has not and cannot plead. (ECF No. 140 at 2-3). In doing so, Defendants misconstrue the case law and read in a requirement that does not exist under Ohio law.

As this Court recently explained, "the requirement that there be an economic transaction between plaintiff and the defendant is limited to situations where plaintiff is an indirect purchaser of defendant's good." *Corp. Bertec v. Sparta Software Corp.*, No. 2:19-CV-04623, 2020 WL 2112162, at *9 (S.D. Ohio May 4, 2020) (citing *In re Natl. Prescription Opiate Litig.*, 1:17-MD-2804, 2018 WL 6628898, at *20 (N.D. Ohio Dec. 19, 2018)). The cases on which Defendants rely are limited to such manufacturing supply chain cases. (ECF No. 140 at 6-10). *See, e.g., Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio S. Ct. 2005) ("an indirect purchaser cannot assert a common-law claim for restitution and unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser"); *Ohio Edison Co. v. Direct Energy Bus.*, Case No. 5:17 CV 746, 2017 WL 3174347, at *3 (N.D. Ohio Jul. 26, 2017) (finding the middleman who engaged in separate transactions with each party severed any direct economic link between them); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 684 F. Supp. 2d 942, 953 (N.D. Ohio 2009) (rejecting "chain of sale" argument as basis for unjust enrichment claim).

Determining whether a benefit has been conferred does not require a rigid application of whether the two parties were directly engaged in an economic transaction. Rather, the core inquiry is whether the benefit conferred "contains an element of causation." *Randleman v. Fid. Nat. Title Ins. Co.*, 465 F. Supp. 2d 812, 824 (N.D. Ohio 2006). *See also Guardian Tech., Inc. v. Chelm Properties, Inc.*, 2002-Ohio-4893, ¶ 10 (Ohio Ct. App. Sept. 19, 2002) ("[c]ircumstances may exist to support an unjust enrichment claim against a noncontracting third-party who benefits from the

5

uncompensated work of one of the parties to the contract"); *Hummel v. Hummel*, 133 Ohio St. 520, 525 (Ohio S. Ct. 1938) (extending liability to non-contracting third party who had knowledge of the transaction and unjustly received money).

Here, the alleged benefits conferred are not a result of an indirect chain of sale or separate transactions with a middleman that would sever the chain of causation. Taking Plaintiffs' allegations as true, Plaintiffs' used their own vehicles without proper compensation, which directly conferred a benefit on Defendants "in the form of increased sales, profits, revenue, royalties volume, market share, and franchise fees." (ECF No. 144 at 19). Plaintiff alleges the Domino's Defendants had knowledge of such reimbursement policies and the benefits they received from under-reimbursing drivers. While these benefits may "hit the franchisees' bank accounts" first, Plaintiffs' losses are causally connected to Domino's gain. (*Id.*). *See Randelman*, 465 F. Supp. 2d at 824; *Fairfield Ready Mix v. Walnut Hills Assocs., Ltd.*, 572 N.E.2d 114, 116 (Ohio Ct. App. 1988) ("the concept of unjust enrichment includes not only loss on one side but gain on the other, with a tie of causation between them").

The Court concludes Plaintiff has sufficiently alleged he and similarly situated drivers conferred a benefit on Defendants when using their own vehicles with no or little compensation, which they allege contributed to Defendants' increased profits and competitive pricing. He further alleges Defendants had knowledge of said benefit, which Defendants do not dispute. Therefore, the Court finds Plaintiff has met the first two elements of his unjust enrichment claim.

### B. Whether retention of benefit was "unjust"

The third and final element of an unjust enrichment claim requires a showing that it would be unjust for Defendant to retain the alleged benefit. *Bihn*, 980 F. Supp. 2d at 904. The Domino's Defendants argue that, even if a benefit was conferred, it was not done unjustly because Plaintiff

6

agreed to the terms of his vehicle reimbursement by an express contract. (ECF No. 140 at 11-13). The Baker and Precision Defendants join in this part of the Domino's Defendants' Motion. (ECF Nos. 141, 142).

Defendants argue that Plaintiff's employment contract governed his compensation, including vehicle reimbursement, and thus he cannot recover on an unjust enrichment theory. (ECF No. 140 at 11) (citing *Ford v. Pennsylvania Higher Educ. Assistance Agency*, No. 5:17-CV-49, 2018 WL 1377858, at *7 (N.D. Ohio Mar. 19, 2018) ("Ohio law does not allow parties to seek damages under quasi-contractual theories of recovery, such as a claim of unjust enrichment, when a contract governs the relationship")). Plaintiff responds that he did not allege the existence of a contract, but that even if a contract existed, it would be void because it is illegal under the FLSA. (ECF No. 144 at 20-22).

Defendants' argument misapplies the precedent on the relationship between contract law and unjust enrichment claims. In holding that "a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject," the Sixth Circuit explained that the payment of insurance premiums was not a "benefit" under unjust enrichment doctrine because it was consideration for the commitment to insure. *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009). Here, even if an employment contract governed the reimbursement, the alleged benefit conferred was not consideration in the employment contract. Plaintiff was not paying Defendants for a good or service. Rather, he alleges the use of his own vehicle combined with Defendants' unlawful reimbursement practices unjustly conferred a benefit on Defendants that contributed to increased profits and market competitiveness.

Moreover, a plaintiff may plead unjust enrichment "despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality." *Ford v. Pennsylvania Higher*

7

*Educ. Assistance Agency*, No. 5:17-CV-49, 2018 WL 1377858, at *7 (N.D. Ohio Mar. 19, 2018). Here, Plaintiff has pled sufficient facts suggesting that Defendants' reimbursement system for delivery drivers was illegal under the FLSA and that Defendants knew or should have known its compensation system violated federal law, pointing to the numerous FLSA lawsuits on the issue and the Department of Labor's Field Operations Handbook that addresses delivery drivers' reimbursement. (ECF No. 144 at 11) (citing *U.S. Fid. & Guar. Co. v. Lightning Rod Mut. Ins. Co.*, 687 N.E. 2d 717, 721 (Ohio S. Ct. 1997)). This Court and others have recognized that "[i]ndividuals may not contract away the right to be classified and compensated properly." *Wagoner v. N.Y.N.Y., Inc.*, No. 1:14-CV-480, 2015 WL 1468526, at *6 (S.D. Ohio Mar. 30, 2015). Thus, Defendants cannot rely on a contract that Plaintiff alleges violates federal law as the basis for dismissing the unjust enrichment count.

### C. Preemption

Finally, Defendants argue in their Reply that the Court should dismiss Count VII because the FLSA is the exclusive remedy for Plaintiff's recovery of wage and hour violations. (ECF No. 146 at 5). Defendants cite the Sixth Circuit's recent decision in *Torres v. Vitale*, which found plaintiffs were barred from bringing a civil RICO claim to enforce their statutory rights under the FLSA. 954 F.3d 866, 874 (6th Cir. 2020). Here, though the claims may have facts in common, Plaintiffs' FLSA claim requires the Court to apply a different test for liability, and thus consider different factors, from the unjust enrichment claim. *See Carter v. PJS of Parma, Inc.*, No. 1:15-cv-1545, 2016 WL 1316354, at *5 (N.D. Ohio Apr. 4, 2016) (concluding FLSA claim turned on the establishment of an employer-employee relationship while unjust enrichment claim examined the benefit conferred, and therefore "plaintiffs' unjust enrichment claim is neither duplicative of, nor dependent on, their FLSA claim"); *Monahan v. Smyth Automotive, Inc.*, No. 1:10-cv-0048,

2011 WL 379129, at *5 (S.D. Ohio Feb. 2, 2011) ("unjust enrichment, while possibly based on many of the same facts, is not a claim duplicative of an FLSA claim"). At the very least, plaintiffs are "permitted to plead claims in the alternative, and a court may not dismiss claims as preempted until the parties have had a chance to develop the facts during discovery to assess whether 'facts different from those comprising the [federal] claim support the state common law state claims.'" *Bertec*, 2020 WL 2112162, at *8 (quoting *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 990 (N.D. Ohio 2008)).

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss (ECF Nos. 140, 141, 142) are **DENIED.**

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: September 28, 2020**