IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Ronald Clark,<br><br>*On behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Pizza Baker Inc., *et al*,<br><br>Defendants. | Case No. 2:18-cv-157<br><br>Chief Judge Algenon L. Marbley<br><br>Magistrate Judge Elizabeth Preston Deavers |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL OF A SETTLEMENT BETWEEN PLAINTIFF AND DEFENDANTS LISA BURKETT AND PRECISION PIZZA, LLC**

Plaintiff Ronald Clark asks the Court to grant final approval of the settlement between Plaintiff and Defendants Lisa Burkett and Precision Pizza, LLC (collectively, "the parties"). The Settlement Agreement, attached as Exhibit 1, resolves the collective/class-wide claims raised in this lawsuit. To that end, Plaintiff asks that the Court:

(1) Approve the proposed settlement.

(2) Approve the service award for the Plaintiff.

(3) Approve Class Counsel's request for attorneys' fees and costs.

The arguments in support of Plaintiff's Motion are more fully set forth in the attached memorandum.

Respectfully submitted,

*/s/ Andrew R. Biller*
Andrew R. Biller
Andrew P. Kimble
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
www.billerkimble.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Ronald Clark, *On behalf of himself and those similarly situated*, Plaintiff, v. Pizza Baker Inc., *et al*, Defendants. | Case No. 2:18-cv-157 Chief Judge Algenon L. Marbley Magistrate Judge Elizabeth Preston Deavers |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL OF A SETTLEMENT BETWEEN PLAINTIFF AND DEFENDANTS LISA BURKETT AND PRECISION PIZZA, LLC

1. **Introduction**

Plaintiff has reached a Settlement Agreement (Exhibit 1) between Plaintiff, the putative class/collective action members, and Defendants Lisa Burkett and Precision Pizza, LLC (the "Precision Defendants"). On April 25, 2022 the Court granted preliminary approval of the settlement. Doc. 171. Plaintiff distributed notice of the settlement. No class members opted-out or objected. Plaintiff now asks the Court to grant final approval to the settlement.

2. **Standard for Settlement Approval**

Courts typically use a three-step procedure for approving settlements. *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 U.S. Dist. LEXIS 157375, at *1 (S.D. Ohio Jan. 10, 2011). First, the Court determines whether to preliminarily approve the settlement. *Id.* Second, notice of the

Case: 2:18-cv-00157-ALM-EPD Doc #: 176 Filed: 09/21/22 Page: 4 of 19 PAGEID #: 2131

settlement is sent to interested persons. *Id.* And third, the Court must decide whether to finalize approval after holding a hearing. *Id.*

In evaluating an FLSA settlement and an Ohio law wage and hour settlement, the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, 2012 U.S. Dist. LEXIS 74994, at *5 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

**3. Background of the Lawsuit and the Claims**

Plaintiff Ronald Clark was a pizza delivery driver for the Precision Defendants' Domino's franchise. The Precision Defendants operated approximately six locations in Ohio during the relevant time.

On February 23, 2018, Plaintiff filed this lawsuit on behalf of himself and similarly-situated delivery driver employees. The Complaint was later amended on February 27, 2018 (Doc. 3), April 13, 2020 (Doc. 137), and October 13, 2020 (Doc. 158).

This lawsuit alleges several wage and hour claims, all centered on the Precision Defendants' policy of reimbursing delivery drivers for the use of their vehicles. Specifically, the Precision Defendants require Plaintiff and the other delivery drivers to provide their own vehicles to deliver the Precision Defendants' pizza and other food. The parties agree that (1) the vehicles are "tools of the trade," (2) employers must adequately reimburse employees who provide "tools of the trade," and (3) that the Precision Defendants did reimburse the drivers something for their

2

vehicle expenses. The parties dispute whether Defendants adequately reimbursed Plaintiff and other drivers for their vehicle expenses.

Plaintiff contends that, in order to adequately reimburse delivery drivers, employers must either (1) track and reimburse each drivers' actual expenses or (2) reimburse each driver at the IRS mileage rate. *See Waters v. Pizza to You, L.L.C.*, 2021 U.S. Dist. LEXIS 87604, (S.D. Ohio May 7, 2021), *citing* DOL Field Operations Handbook § 30c15(a)(2000). Plaintiff alleges that Defendants did neither and this under-reimbursement dropped the delivery drivers' wages below the legally permissible minimum wage.

Defendants argue, however, that they are permitted to "reasonably approximate" the employee's expenses and reimburse that amount. *See Bradford v. Team Pizza, Inc.,* No. 1:20-CV-00060, 568 F.Supp.3d 877, 883 (S.D. Ohio Oct. 19, 2021). Defendants further argue that their reimbursement met this standard and, accordingly, there has been no underpayment.

If Plaintiff's position prevailed, then the underpayment would trigger a number of wage-related claims, including state and federal minimum wage and overtime claims and a violation of Ohio's Prompt Pay Act. If Plaintiff proved certain other facts, Plaintiff could also seek remedies under O.R.C. § 2307.60 (imposing civil damages for criminal acts[1]) and Ohio law unjust enrichment. On the other hand, if Defendants' position prevailed, Defendants could prove that either (1) they met the applicable legal standard (meaning Plaintiff is not entitled to anything) or (2) any under-reimbursement was minimal, thereby greatly reducing Plaintiff's damages.

---

[1] A willful violation of the FLSA is a criminal act. *See* 29 U.S.C. 216(a).

4. **Settlement Negotiations**

The parties have made multiple attempts to settle this dispute, including two formal mediations. The first mediation was with Frank Ray, a well-respected mediator in the Columbus area. The mediation occurred on March 11, 2020, but it did not result in a settlement.

Later, on January 26, 2021, the parties participated in a mediation with a former magistrate judge of this court, Mark Abel. Magistrate Judge Abel was able to broker a deal, which resulted in the Agreement now before the Court for approval.

Prior to both mediations, the Precision Defendants provided to Plaintiff financial disclosures related to the Precision Defendants' ability to pay a settlement or judgment. Those disclosures factored into the negotiations and the Agreement.

These negotiations occurred in the context of a hotly-contested litigation. Defendants filed multiple motions to dismiss, which were fully briefed and ruled upon by the Court. *See* Doc. 99 and 151. The parties also battled over the scope of discovery, and a number of those disputes were almost ripe to present to the Court. Similarly, Plaintiff had briefed a motion for conditional certification. *See* Doc. 22.

5. **Summary of Settlement Terms**

The Agreement requires the Precision Defendants to pay a total of $300,000 to resolve Plaintiff's and the putative class members' claims in this lawsuit. The $3000,000 is inclusive of expenses, service awards, and attorney's fees. Payment of the settlement money will occur within 40 days of the Court granting final settlement approval.

Because of the Precision Defendants' financial inability to withstand a greater judgment or settlement, the parties have agreed to allow the Precision Defendants to make three payments. The

4

first payment will occur within 40 days of final approval, with the second payment on or before December 31, 2022, and the third payment on or before December 31, 2023. Class Counsel's fees are likewise divided into three equal payments, paid at the same time as the class members' payments, thereby putting Class Counsel in the same position as their clients.

The fund will be distributed to every class member, without requiring anyone to submit a claim form. Each class member will receive his or her prorated share, based on the miles that each class member drove for the Precision Defendants.

**6. The Settlement provides a fair resolution of disputed claims.**

When evaluating a settlement, the most important consideration is the plaintiff's probability of success on the merits. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20. To assist the Court with that endeavor, Plaintiff will describe the facts and law underlying his claims.

In large part, the underlying facts are not in dispute and are discernible from the Precision Defendants' business records. Specifically, the Precision Defendants' delivery drivers drove approximately 2,483,031.67 miles during the relevant time. During that time, the Precision Defendants reimbursed the drivers $744,909.50. This is an average reimbursement rate of approximately $0.30 per mile.

The dispute in this case centers on determining the appropriate legal standard. This is a vigorously disputed legal issue across the nation. Indeed, Class Counsel is involved in many of these cases, including cases in at least 15 states. Because of a split of authority within this district, this issue is set for briefing in the Sixth Circuit.

During this case's pendency, numerous courts and arbitrators have come to divergent opinions on the proper legal standard for reimbursing delivery drivers. Some support Plaintiff's

position. *See, e.g., Hatmaker v. PJ Ohio, LLC*, 2019 U.S. Dist. LEXIS 191790 (S.D. Ohio Nov. 5, 2019). Some support the Precision Defendants' position. *Bradford*, 568 F.Supp.3d at 883. On August 31, 2020, at the request of a pizza company, the Department of Labor (under President Trump) weighed in and seemingly supported the Precision Defendants' position. *See* Opinion Letter, FLSA2020-12. To date, only three federal courts have ruled on whether the Letter is worthy of deference. Two found that it is not. *See Waters*, 2021 U.S. Dist. LEXIS 87604; *Parker v. Battle Creek Pizza, Inc.*, 2022 U.S. Dist. LEXIS 76990, at *10 (W.D. Mich. Apr. 28, 2022). The third considered the deference question, but the court determined that it did not have to answer it, since it concluded that the regulations at issue were not genuinely ambiguous. *Bradford,* 568 F.Supp.3d at 882.

If Plaintiff prevailed and the Court adopted the standard from the DOL Handbook, then, according to Plaintiff's calculations, the under-reimbursed amount is approximately $619,988.36. From there, additional damages under Ohio law (see Ohio Const. Art. II, Sec. 34a) would apply, FLSA liquidated damages may apply, punitive damages under O.R.C. § 2307.60 may apply, and any amount by which the Precision Defendants were unjustly enriched could be recovered. These additional amounts could be very substantial, but, in large part, meaningless because the Precision Defendants would have a limited ability to pay them—especially after paying the cost of defense for a trial and appeal.

If the Precision Defendants prevailed, however, then the parties would dispute whether the Precision Defendants "reasonably approximated" the drivers' expenses. This dispute is generally determined by reference to competing expert witnesses who testify as to what reimbursement rate is "reasonably approximate" to the drivers' expenses. The Precision Defendants would then have

6

the opportunity to prove that the amount they paid meets this standard, thereby eliminating Plaintiff's claims. Alternatively, the Precision Defendants could prove that the under-reimbursement was only a few cents, thereby reducing Plaintiff's potential damages to a very small amount. And, of course, Plaintiff could prove that the IRS rate is, in fact, the proper "approximation" of expenses. *See, e.g., Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 716 (E.D. Pa. 2014).

As it stands, the Agreement provides substantial relief, particularly considering the unsettled law in this area and the Precision Defendants' ability to pay a greater amount.

### 7. Additional Fairness Considerations

When evaluating settlements, courts also look at other factors, including (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; and (6) the public interest. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20. Plaintiff addresses each factor below.

**Complexity, expense and likely duration.** Wage and hour class/collective actions are inherently complex. *See, e.g., Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). Pizza delivery driver cases are especially complex and time consuming because of the disputed legal standard that turns on regulations, *Auer* deference issues, conflicting Department of Labor guidance, and the potential for expert testimony. This factor weighs in favor of approving the settlement.

**Stage of the proceedings/discovery.** The parties have litigated this case for over three years. Plaintiff overcame two motions to dismiss, both of which helped provide a legal roadmap for

7

several Plaintiff's claims. *See* Doc. 99 and 151. In some ways, however, the case is at the beginning stages of litigation. For example, conditional certification has not yet been adjudicated and discovery, while started, was paused to facilitate two mediations.

That said, the facts relevant for informed settlement discussions are mostly limited to the defendants' reimbursement rate, total potential damages[2], and the type of reimbursement at issue (per mile, per delivery, percent-of-order, etc.). This information comes from the employer's records and was exchanged prior to the mediations. As a result, the parties were able to properly discern the case's strengths and weaknesses. Moreover, Plaintiff's counsels' high level of experience in pizza delivery driver cases and the developments in this area of law allowed Plaintiff to effectively evaluate the case for settlement.

The informal discovery conducted and stage of proceedings in this case weigh in favor of approval.

**Trial counsel's judgment.** Plaintiff's counsel supports the settlement and believes that it is a fair, adequate, and reasonable resolution.

**Negotiations.** The negotiations in this case included two mediations.

The first mediation occurred on March 11, 2020. Respected Columbus mediator Frank Ray conducted the mediation. The parties were unable to reach an agreement at that mediation.

The second mediation occurred on January 26, 2021. Retired Magistrate Judge Mark Abel conducted the mediation. With his assistance, the parties were able to reach the deal that forms the basis of the agreement now before the Court.

---

[2] *I.e.*, (proper reimbursement rate × miles driven) - reimbursements actually paid = potential under-reimbursement

8

The nature of the negotiations and two mediations demonstrate that the parties negotiated at arms-length. This factor weighs in favor of approval.

**Class member objections.** No class member has objected to the settlement.

**The public interest.** The public has an interest in both resolving complex class actions, which require significant Court resources that could be allocated to other matters. Moreover, the public has an interest in ensuring that minimum wage workers receive a just and speedy resolution to claims for unpaid wages. Both of these weighs in favor of approving the settlement.

8. **Outcome of the Notice Process**

As part of the Court's Order preliminarily approving the settlement, the Court asked the parties to revise the Notice to ensure that it informed class members of their ability to opt in or opt out of the case. Doc. 171 and 172. The parties revised the Notice to do so, which the Court then reviewed and approved. Doc. 174.

The Claims Administrator distributed by both regular mail and email to the class members. In total, the Claims Administrator sent notice to 270 workers. Of those, 17 mailings were returned as undeliverable. The Claims Administrator was able to then resend 8 of those with corrected addresses either through a forwarding address or skip tracing. The Claims Administrator additionally corrected 37 addresses through a Trans Union search.

No class members objected to the settlement. No class members opted-out of the settlement. This indicates that the class members are satisfied with the settlement.

Under the settlement's terms, every class member who did not opt out, *i.e.*, 100% of the class, will receive a check for their portion of the settlement. In other words, class members do not need to take any additional action to recover under the settlement. "The payment of actual money

9

to class members without strings attached markedly increases the value of a settlement and further counsels in favor of approval." *Waters v. Pizza To You, LLC*, 2022 U.S. Dist. LEXIS 139084, at *12 (S.D. Ohio Aug. 1, 2022).

### 9. The proposed attorneys' fee award is reasonable and should be approved.

Class Counsel applies for an award of one-third of the settlement fund as attorneys' fees ($100,000). One-third of a common fund "is a normal fee amount in a wage and hour case.". *See, e.g., Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *5; *see also Dewald v. Time Warner Cable Inc.*, 2021 U.S. Dist. LEXIS 32459, at *14 (S.D. Ohio Feb. 16, 2021) ("When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are 1/3 of the total settlement."). "Absent compelling reasons to the contrary, this Court prefers the percentage-of-the-fund method, as it best reflects the FLSA's employee-protection objective." *Dewald*, 2021 U.S. Dist. LEXIS 32459, at *16.

This case presents no compelling reasons to deviate from an award of one-third of the settlement fund. Moreover, the Sixth Circuit has recently instructed courts to "content themselves with 'rough justice,'" further indicating that, unless the case presents unique circumstances, awarding a customary fee amount is appropriate. *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 618 (6th Cir. 2021).

In considering fee awards, courts analyze the six *Ramey* factors to ensure the attorneys' fee award is reasonable: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional

10

skill and standing of counsel on both sides. *Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, 2018 U.S. Dist. LEXIS 179474, at *11 (S.D. Ohio Oct. 17, 2018). There is not a formula for weighing the factors. *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2018 WL 3957364, 2018 U.S. Dist. LEXIS 139769, at *7 (S.D. Ohio Aug. 17, 2018). Here, each of these factors weighs in favor of granting the requested fee.

First, the settlement results in a substantial benefit to the class. As described in this Motion, this is a case that might well result in a worse outcome for the class if litigation continued. This is particularly true given that there is a split of authority in this district regarding the main legal issue in this case. Moreover, even if Plaintiff was completely successful, Defendants are unlikely to be able to pay a full judgment.

As it stands, the total settlement is $300,000. The total unpaid wages—*if* Plaintiff's legal theory prevailed *and* Plaintiff's calculations of damages prevailed—is $619,988.36. Even subtracting the requested fees and costs, the class members stand to gain a substantial portion of their alleged unpaid wages according to Plaintiff's calculations (about 29.9%). The amount of recovery may exceed 77% of the alleged unpaid wages if the Court agreed with the *Bradford* decision. *See Bradford*, 568 F.Supp.3d 877. This is a good result, particularly because of the serious collectability concerns in this case. *See, e.g.*, *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, 2016 WL 5907869, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing Inc.*,

11

2010 WL 776933, 2010 U.S. Dist. LEXIS 20446, *20 (N.D. Ohio Mar. 8, 2010) (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average."). This factor supports the requested fee award.

Second, there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources, and "the societal benefit is particularly acute in wage and hour cases brought on behalf of minimum wage workers. *Arp v. Hohla & Wyss Enters., LLP*, 2020 U.S. Dist. LEXIS 207512, at *17–18 (S.D. Ohio Nov. 5, 2020). "The attorneys who take on class action cases enable this." *Id.*, *citing Moore v. Aerotek, Inc.*, 2017 WL 2838148, 2017 U.S. Dist. LEXIS 102621, *26–27 (S.D. Ohio June 30, 2017). Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* This factor supports the requested fee award.

Third, class counsel's services were provided on a contingency fee basis. This factor supports the requested fee award.

Fourth, while a lodestar cross-check is not required,[3] it too supports the requested attorneys' fees award. Class Counsel worked a total of 814.1 hours on this case as of August 26, 2022, for a total lodestar of $450,142.[4] Class Counsel's hours and rates are listed in the below chart, taken from Class Counsel's contemporaneous time records:[5]

| Timekeeper | Rate | Hours | Lodestar |
|---|---|---|---|
| Andrew Biller | $600 | 143.4 | $118,260 |
| Andrew Kimble | $600 | 225.6 | $135,360 |

---

[3] *Arp*, 2020 WL 6498956, 2020 U.S. Dist. LEXIS 207512, at *18.
[4] Obviously, additional work will go into the case from this date including preparing for and attending a final hearing, administering the settlement, and addressing class member questions.
[5] The rates reflected herein are current rates rather than the historical, lower rates, that might have applied had Plaintiffs sought a fee award at the start of the litigation in 2018. *See, e.g., Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) (approving the use of current rather than historical rates). The hours worked excludes the time reviewing and responding to 1,000+ emails exchanged in this case.

| Erica Blankenship | $350 | 12 | $4,200 |
| Philip Krzeski | $350 | 126.3 | $64,295 |
| Nathan Spencer | $350 | 155.4 | $91,350 |
| BK Paralegal | $150 | 119.7 | $20,827 |
| Louise Roselle | $500 | 31.7 | $15,850 |
| **Totals** | | 814.1 | **$450,142** |

If it would assist the Court, Class Counsel can make their time records available for the Court's review. Given the voluminous nature of those records, length of litigation, number of docket entries evidencing substantial work, and time it would take to compile and review those records, Class Counsel suggest that such a detailed review is not necessary here. "In determining fee awards, courts should not 'become green-eyeshade accountants[,]' but instead must content themselves with 'rough justice[.]'" *Rembert*, 986 F.3d at 618.

Class Counsel's hourly rates have been approved as reasonable in numerous cases. *See, e.g., Waters v. Pizza to You, LLC*, 2022 U.S. Dist. LEXIS 139084, at *13 (S.D. Ohio Aug. 1, 2022) (approving and citing other cases approving counsel's rates as reasonable). The sole exception is Attorney Kimble's rate. Mr. Kimble's $550 has been approved as reasonable for years, and he has not adjusted it. After review, he has raised his rate to $600 in light of his experience and reputation in this area of law.

Of relevance to analyzing the lodestar in this case is that there are two separate settlements because the case encompasses two sets of defendants. Because the claims against each are the same, nearly all of the work in this case advanced claims against both defendants. Consistent with the Sixth Circuit's instruction to do "rough justice," the most efficient way to analyze the lodestar is likely to prorate the lodestar between the two settlements based on the value of the settlements. Doing so would mean that roughly 37% of the lodestar would be attributable to the settlement here, *i.e.*, $166,553 of the lodestar is attributable to this settlement.

13

Prorating the lodestar in the way noted above results in a lodestar multiplier of 0.6. In other words, counsel is receiving substantially less than their lodestar. Counsel is hesitant to say receiving less than their multiplier is "reasonable," but it *is* the nature of contingent work—sometimes the result is good and sometimes the result is bad. The relevant part for the Court's analysis, however, is that the lodestar gives no reason to reject the fee request.

Moreover, Class Counsel's work will continue after final approval. "Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *McConnell*, 2021 WL 1966062, 2021 U.S. Dist. LEXIS 92836, at *19.

In addition to the hours Class Counsel has worked on this pizza delivery driver case, Biller & Kimble, LLC has worked many thousands of hours on pizza delivery driver cases throughout the country. Class Counsel has "established an expertise in 'pizza delivery driver' litigation, having expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, 2019 U.S. Dist. LEXIS 11019, at *14 (S.D. Ohio Jan. 17, 2019); *see also Brandenburg*, 2019 WL 6310376, 2019 U.S. Dist. LEXIS 204371, at *6 (discussing Biller & Kimble's expertise in this area). These hours "directly benefited the class in this case." *Arp*, 2020 WL 6498956, 2020 U.S. Dist. LEXIS 207512, at 20. "A firm's expertise in a niche area provides important context when analyzing the reasonableness of a fees." *Id*. at *21. "It would be inequitable for a court to reduce a fee award based on a lodestar cross-check without considering a law firm's work other cases raising the same or similar issues." *Id*. Here, Class Counsel's expertise in this niche area enhanced their representation here.

14

Taken together, the lodestar crosscheck in this case gives no reason for the Court to deviate from the norm of awarding one-third of the settlement fund.

Fifth, wage and hour class/collective actions are "inherently complex." *Arledge,* 2018 WL 5023950, 2018 U.S. Dist. LEXIS 179474, at *5. This factor supports approval of the requested fee award. This case involved novel and complex issues of law that have been hotly contested throughout the country. This factor supports the requested fee award.

Sixth, both the class and Defendants are represented by skilled and experienced counsel. As noted above, Class Counsel has substantial experience in pizza delivery driver litigation. Defendants' counsel likewise is experienced in wage and hour litigation, including pizza delivery driver reimbursement cases. This factor supports the requested fee award.

Based on the Court's preliminary approval of Plaintiff's fees and because all the *Ramey* factors support the requested fee award, Plaintiff requests the Court to grant final approval to class counsel's request for one-third of the settlement fund in attorneys' fees.

**10. The requested reimbursement for advanced expenses is reasonable and should be approved.**

In addition to the attorney's fees, counsel asks to be reimbursed their out-of-pocket expenses that they advanced on behalf of the class. In this case, the expenses are $2,257.62. Those expenses include the filing fee, service of process, TransUnion research, and Plaintiff's portion of the mediator's fee (for Frank Ray). The majority of the expenses come from the mediator's fee ($1,726.62).

As with the fee analysis, counsel suggests that the expenses should be prorated between the two settlements based on the size of the settlements. Thus, from the Precision settlement, counsel asks for reimbursement of 37% of the expenses, which is $835.32.

15

In addition to the litigation expenses, counsel asks to be reimbursed for the Claims Administrator's fees attributable to this settlement: $8,993.29. These fees are reasonable for this type of case and cover sending the settlement notices, setting up the QSF, distributing checks, and otherwise administering the settlement.

**11. The incentive payment is reasonable, and similar payments are routinely awarded.**

Plaintiff requests a $5,000 incentive/service award in this case. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).

Incentive awards account for the fact that "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real." *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 U.S. Dist. LEXIS 204371, at *21 (S.D. Ohio Nov. 25, 2019). The same considerations apply to this case as well.

The incentive award proposed here is half of what is typical in these types of cases. *See, e.g., Chrismon v. Meadow Greens Pizza*, 2020 U.S. Dist. LEXIS 119873, at *14 (E.D.N.C. July 7, 2020) (collecting cases approving a $10,000 service award in pizza delivery driver cases). Plaintiff will seek the same amount as part of the settlement with the other defendants in this case, thereby bringing his proposed award in line with what is typically awarded in these cases.

**12. Conclusion**

Plaintiff asks the Court to enter an Order:

(1) granting final approval of the settlement;

(2) approving Class Counsels' request for attorneys' fees of $100,000;

(3) approving Class Counsel's request for reimbursement of expenses of $835.32 and claims administration fees of $8,993.29;

(4) approving Plaintiff's service award of $5,000;

                                            Respectfully submitted,

                                            */s/ Andrew R. Biller*
                                            Andrew R. Biller
                                            Andrew P. Kimble
                                            Biller & Kimble, LLC
                                            8044 Montgomery Road, Suite 515
                                            Cincinnati, OH 45236
                                            Telephone: (513) 715-8711
                                            Facsimile: (614) 340-4620
                                            *abiller@billerkimble.com*
                                            *akimble@billerkimble.com*
                                            www.billerkimble.com

**Certificate of Service**

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

                                            */s/ Andrew Biller*
                                            Andrew Biller