IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RONALD CLARK,** *on behalf of himself and those similarly situated*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **PIZZA BAKER, INC.,** *et al.*, <br><br> **Defendants.** | : <br> : <br> : Case No. 2:18-cv-157 <br> : <br> : **CHIEF JUDGE ALGENON L. MARBLEY** <br> : <br> : **MAGISTRATE JUDGE DEAVERS** <br> : <br> : <br> : |

## FINAL SETTLEMENT APPROVAL ORDER

This matter comes before this Court on Plaintiff's Unopposed Motion for Settlement Approval between Plaintiff and Defendants Christopher Baker and Pizza Baker, Inc. (the "Baker Defendants"). (ECF No. 175). For the following reasons, this Court **GRANTS** the Motion for Settlement Approval, and the case is **DISMISSED WITH PREJUDICE.** As outlined in the settlement agreement, within **thirty (30) days** of Defendants making the agreed to payments to the class, the parties will submit a stipulation dismissing, with prejudice, the Baker Defendants from the lawsuit. (ECF No. 175-1 at 12). This Court will retain jurisdiction over the settlement agreement.

## I. BACKGROUND

Plaintiff Ronald Clark, on behalf of himself and all other persons similarly situated, initiated this lawsuit in February 2018 by filing a Class and Collective Action Complaint with this Court against three groups of Defendants: (1) Domino's Pizza, Inc., Domino's Pizza, LLC, and Domino's Pizza Franchising, LLC (the "Domino's Defendants"); (2) Lisa Burkett and Precision Pizza, LLC (the "Precision Defendants"); and (3) the Baker Defendants. (ECF No. 1). Clark, a pizza delivery driver for Defendants, alleged that they violated the Fair Labor Standards

Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), and O.R.C. § 2307.60. (ECF No. 1).

As a delivery driver, Plaintiff delivered pizza and other items to customers. (ECF No. 158 at ¶¶ 85-86). When not completing deliveries, delivery drivers performed other tasks, including constructing boxes, cleaning, food preparation, and other duties as necessary. (*Id.* at ¶ 89). Delivery drivers were paid at or close to minimum wage, or minimum wage minus a tip credit. (*Id.* at ¶ 90). The Defendants required their delivery drivers to maintain and pay for their own operable, safe, and legally compliant automobiles to make deliveries. (*Id.* at ¶ 92). Delivery drivers were responsible for job-related expenses, including automobile costs and depreciations, gas, automobile maintenance and parts, insurance coverage, financing costs, cell phone costs, and any other necessary equipment, for which they were not wholly reimbursed. (*Id.* at ¶¶ 93-94). Plaintiff alleges that the Baker Defendants reimbursed drivers a flat per-delivery payment amount. (*Id.* at ¶¶ 98-99). The Defendants did not reimburse their drivers at the IRS standard mileage rate for the delivery miles driven, which they were required to do because they did not keep records of Plaintiff's actual expenses. (*Id.* ¶¶ 120, 148, 153). Due to these expenses, Plaintiff alleges that he and similarly situated delivery drivers were deprived of minimum and overtime wages guaranteed to them under the FLSA and Ohio law. (*Id.* ¶¶ 144–47, 163–64).

### A. Procedural History

Plaintiff brought this action on behalf of himself and similarly situated current and former delivery drivers who elected to opt in, pursuant to Section 216(b) of the FLSA, and who did not opt out as a class action under Fed. R. Civ. P. Rule 23. (ECF No. 3 at 45-46). Plaintiff filed the First Amended Complaint on February 27, 2018. (ECF No. 3). The Defendants sought to dismiss the action to the extent it sought declaratory relief in April 2018, and this Court granted the

motion. (ECF Nos. 23, 24, 44, 99). Plaintiff then filed a Motion to Certify the Class and send notice to similarly situated employees in October 2019. (ECF No. 106). Discovery in the case and the briefing on the Motion for Conditional Certification were then stayed while the parties completed all discovery related to the issue of joint employment. (ECF Nos. 122, 128).

Plaintiff filed his Second Amended Complaint against the Defendants in April 2020, adding a claim for unjust enrichment, and the stay on discovery was lifted that same month. (ECF Nos. 137, 139). The Defendants filed a new Motion to Dismiss in May 2020, which this Court denied. (ECF Nos. 140, 141, 142, 144, 151). Plaintiff then filed the Third Amended Complaint in October 2020, seeking to: (1) dismiss without prejudice the claims asserted against the Domino's Defendants; and (2) limit the scope of the proposed FLSA collective/Rule 23 class to pizza delivery drivers who worked for the Domino's Pizza franchise locations owned and operated by the Precision and Baker Defendants during the relevant period. (ECF No. 158 at 3). He then filed a revised Motion to Certify the Class and send notice to similarly situated employees, which was held in abeyance pending mediation. (ECF No. 163, 165).

### B. Settlement Agreements

Plaintiff and the Baker Defendants reached settlement following several mediation sessions in early 2021. (ECF Nos. 168, 169, 170). Plaintiff filed an unopposed Motion for Preliminary Settlement Approval with the Baker Defendants, which this Court granted in part and denied in part. (ECF Nos. 170, 172). This Court ordered Plaintiff to file an amended notice properly informing the proposed FLSA putative collective action members how to opt into the settlement, while allowing the Rule 23 class action members to opt out of the settlement. (ECF No. 172 at 3). Following review of the Amended Notice filed by Plaintiff on May 9, 2022, this Court issued an order stating the notification deficiencies were satisfied and ordering the Notice

Period to commence. (ECF No. 174). On September 21, 2022, Plaintiff filed an unopposed Motion for Final Settlement Approval with the Baker Defendants. (ECF No. 175).

The Baker Defendants agreed to pay $510,000 to resolve all of the claims raised in the lawsuit. (ECF No. 175 at 4). In return, all claims against the Baker Defendants will be released and they will be dismissed from the suit. (ECF No. 175-1 at 4). Counsel requests $170,000.00 in attorney's fees, $10,880.93 as reimbursement for the Claim Administrator's fees, and $1,422.30 for expenses related to filing fees, service of process, TransUnion research, and the Plaintiff's portion of the mediator fee. (ECF No. 175 at 10, 15). Additionally, Plaintiff requests a $5,000 service award. (*Id.* at 16). These expenses will be deducted from the total award prior to calculation of the Class Member's payments, leaving $322,696.77 from which the class payments will be calculated. (ECF No. 175-1 at 6). Each Class Member will receive a prorated share of the Settlement Fund based on the miles driven by each Member, divided by the total miles driven by each Member during the Settlement Period. (*Id.* at 6). The Court will retain continuing jurisdiction over the Settlement. (*Id.* at 7).

### C. Claims Process and Final Fairness Hearing

The Class Members for purposes of the proposed Final Settlement Agreement with the Baker Defendants is defined as:

> "All non-exempt hourly delivery driver employees of Pizza Baker's Domino's stores who received mileage reimbursements during the period from February 23, 2015 through February 28, 2021, who do not exclude themselves. February 23, 2015 through February 28, 2021 is the 'Class Period.'" (ECF No. 175-1 at 1-2).

Consistent with this Court's Preliminary Approval Order (ECF No.172), the Claims Administrator for the Settlement with the Baker Defendants mailed and emailed notice to 614 workers. (ECF No. 175 at 9). Of those mailings, 50 were returned undeliverable, even after the

4

Claims Administrator corrected 114 addresses through a Trans Union search. (*Id.*). No class members objected to the settlement nor opted out. (*Id.*). As such, 100% of the Class members will receive a check for their portion of the settlement without taking any additional action. (*Id.*).

This Court has reviewed Plaintiff's unopposed Motion for Settlement Agreement, heard arguments from the parties at a Final Fairness Hearing on October 12, 2022, and approves the proposed settlement for the following reasons.

## II. LAW & ANALYSIS

### A. Final Certification and Approval

This Court has already certified the Rule 23 Settlement Class and FLSA Collective (ECF No. 172) and finds nothing has changed regarding the appropriateness of certification.

### B. Sufficiency of Notice

In class actions certified under Rule 23(b)(3) (*see* ECF No. 172 at 1), notice of settlement must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e). First, no class action may be settled, dismissed, or compromised without court approval, preceded by notice to class members. Fed R. Civ. P. 23(e). Rule 23(c)(2)(B) requires that notice to the class be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection." *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F. 3d 615, 629-30 (6th Cir. 2007) (hereinafter *UAW*) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the Settlement Notice for the agreements with the Baker Defendants "'fairly apprised[d] the prospective members of the class of the terms of the proposed settlement' so that class members [could] come to their own conclusions about whether the settlement serves their interest." *Id.* at 630 (quoting *Grunin v. Int'l House of Pancakes*, 513 F. 2d 114, 122 (8th Cir. 1975)). The Notice "explained its purpose, discussed the nature of the pending suit and proposed class and accurately summarized the [] settlement agreement." *Id.*

### C. Whether Fair, Adequate, and Reasonable

Before approving a settlement agreement, this Court, must determine if the settlement is "fair, adequate, and reasonable, as well as consistent with the public interest." *Bailey v. Great Lakes Canning, Inc.*, 908 F. 2d 38, 42 (6th Cir. 1990) (citing *U.S. v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986)). To do so, the Court balances several factors: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest in the settlement." *Vigna v. Emery Fed. Credit Union*, No. 1:15-CV-51, 2016 WL 7034237, at *3 (S.D. Ohio Dec. 2, 2016). In reviewing a proposed class and collective action settlement, the district court has "'wide discretion in assessing the weight and applicability' of the relevant factors." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992)). Here, this Court finds that the Settlement Agreement with the Baker Defendants is fair, adequate, and reasonable, because all seven factors weigh in favor of approval.

*1. Risk of Fraud or Collusion*

The first factor, risk of fraud or collusion, is negligible, which favors settlement approval.

6

In the order preliminarily approving the settlement agreement for the Defendants, this Court noted that the settlement was the result of "arms-length negotiations conducted after Class Counsel [had] adequately investigated the claims and became familiar with the strengths and weakness of those claims." (ECF No. 172 at ¶ 7). The Defendants filed multiple Motions to Dismiss, the parties argued over the scope of discovery, and the Plaintiff briefed a Motion for Conditional Certification. (ECF Nos. 32, 99, 122, 151). The parties also engaged in multiple mediation sessions, before which Defendants provided Plaintiff financial disclosure statements regarding their ability to pay a settlement or judgment. (ECF No. 175 at 4). "The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008). The parties ultimately reached settlement. (*Id.*). In this context and upon the representation of Plaintiff's Counsel, there is no reason to believed that the settlement involved fraud or collusion, and this Court finds negotiations were conducted at arm's-length.

### 2. Complexity, Expense, and Likely Duration of Litigation

This Court notes that wage and hour class/collective actions are "inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them." *Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-cv-6292, 2022 WL 501206, at *5 (S.D. Ohio Jan. 19, 2022); *see also Brandenburg v. Cousin Vinny's Pizza, LLC,* No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019); *In re Teletronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). Plaintiff also contends that pizza delivery driver cases are especially complex and time consuming because the appropriate legal standard for delivery driver reimbursement remains disputed. (ECF No. 175 at 7). As a result, these cases hinge on

regulations, issues of *Auer* deference, conflicting guidance from the Department of Labor, and the need for expert testimony. (*Id.*) This Court also appreciates that providing relief to class members now will eliminate any uncertainty or delay. Given the important, disputed legal issues that remain unresolved at this juncture, the complexity, expense, and duration of continued litigation weighs in favor of settlement.

*3. Amount of Discovery Completed*

To ensure the "Plaintiff has 'had access to sufficient information to evaluate [his] case and to assess the adequacy of the proposed Settlement[],' the Court must consider the amount of discovery engaged in by the parties." *Carr*, 2022 WL 501206, at *5 (quoting *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2005)). This case was originally filed in February 2018. (ECF No. 1). The Plaintiff has overcome two Motions to Dismiss by both the Defendants in this case. (ECF No. 175 at 7). The parties are in the midst of discovery, and Plaintiff alleges that there were several discovery disputes nearly ripe for submission to this Court prior to mediation. (*Id.* at 4). The Baker Defendants also provided Plaintiff: (1) financial disclosures about their ability to pay a settlement or judgment; and (2) adequate information about the Baker Defendants' reimbursement rates, total potential damages, and the type of reimbursement at issue (per mile, per delivery, percent-of-order) from the Defendants' records. (ECF No. 170 at 7–8). Plaintiff's Counsel has litigated a number of cases involving pizza delivery drivers, allowing them to effectively evaluate the remaining complexities of the case and the appropriateness of a settlement. (*Id.* at 8). This Court finds that Plaintiff's Counsel's experience in this type of litigation and the exchange of information ahead of mediation was sufficient to inform fully the settlement negotiations. *Wright v. Premier Courier, Inc.*, No. 2:17-cv-654, 2018 WL 3966253, at *4 (S.D. Ohio Aug. 17, 2018).

8

*4. Likelihood of Success on the Merits*

A plaintiff's probability of success on the merits is the "most important factor" for a court to consider in approving a wage and hour class/collective action settlement. *See Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *6 (S.D. Ohio May 30, 2012). If the Plaintiff's likelihood of success on the merits is low, "the more desirable a favorable settlement appears." *Id.* While Plaintiff contends that the underlying facts of the case are not disputed, the appropriate legal standard for reimbursing delivery drivers remains disputed and is set for Sixth Circuit briefing. (ECF No. 176 at 5). Under Plaintiff's theory of the case, if Plaintiff prevailed, the under-reimbursement amount would be $589,081.82, with the possibility of substantial, additional compensatory and punitive damages under FLSA's liquidated damages provision and Ohio law. (*Id.* at 6). Plaintiff notes, however, that the Defendants "would have a limited ability to pay them," especially after expending financial resources for a trial and appeal. (*Id.*). If the Defendants prevailed, the parties would litigate whether the Defendants "reasonably approximated" the drivers' expenses, necessitating expert testimony. (*Id.*). Either Plaintiff's claims would be eliminated if this Court found that Defendants reasonably approximated drivers' expenses, or damages would be reduced to a minimal sum if this Court concluded that Plaintiff was only under-reimbursed by a few cents. (*Id.*).

A settlement of $510,000.00 to pay Plaintiff and similarly situated drivers for under-reimbursement, as well as awards and fees, is a substantial sum, especially given the Defendants' financial limitations. (*Id.* at 6). The amount of recovery, in combination with the uncertainty of any recovery for Plaintiff and the proposed class if litigation proceeded, demonstrate the value of the proposed settlement outweighs the likelihood of success on the merits.

### 5. Judgment of Experienced Counsel

Plaintiff's Counsel, who regularly litigates FLSA and state wage and hour claims on behalf of pizza delivery drivers, submits that the proposed final settlement is fair, reasonable, and adequate. (*Id.* at 5). The Court gives great weight to the beliefs of experienced counsel. *See Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Accordingly, this factor weighs in favor of approval.

### 6. Reaction of Absent Class Members

The reaction of potential class members also supports approval. No class or collective action members objected to settlement nor opted out. (ECF No. 175 at 9).

### 7. Public Interest

As the district court noted in *Kritzer*, there is a "public interest favoring settlement . . . as the proposed settlement ends potentially long and protracted litigation." 2012 WL 1945144, at *6 (citing *In re Broadwing*, 252 F.R.D. at 369). The public interest is served where a settlement "provides relief to the class members, avoids further litigation, and frees the Court's judicial resources." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *3 (S.D. Ohio Jan. 18, 2019). Plaintiff also submits that there is a public interest in ensuring that minimum wage workers receive a just and speedy resolution to claims for unpaid wages. (ECF No. 175 at 9). This factor also weighs in favor of settlement approval.

### D. Attorneys' Fees

An award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). There are two methods for determining whether a fee is

reasonable: the percentage-of-the-fund method and the lodestar method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). The Sixth Circuit has approved both methods. *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993). When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are one-third of the total settlement. *See, e.g.*, *Rotuna v. W. Customer Mgmt. Grp., LLC*, 4:09-cv-1608, 2010 WL 2490989, at *8 (N.D. Ohio Jun. 15, 2010) (approving attorneys' fees in the amount of one-third of the settlement fund). The lodestar figure represents the number of hours spent multiplied by reasonable rates. *Reed*, 179 F.3d at 471. Although not mandatory, courts frequently cross-check counsel's request for percentage-of-the-fund awards against the lodestar. *Van Horn*, 436 F. App'x at 501. A district court has discretion to select which method is appropriate in light of the "unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id.*

A district court also analyzes the following factors in determining whether the fee is reasonable: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo v. Morales*, No. 2:12-cv-650, 2015 WL 13021899, at *6 (S.D. Ohio Dec. 22, 2015) (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

### 1. Value of Benefit to Plaintiff Class

Here, the parties propose a percentage-of-the-fund method. (ECF No. 175 at 10). Plaintiff's Counsel would receive attorneys' fees of $170,000, amounting to one-third of the total

settlement proposed. (ECF No. 175 at 10). Plaintiff alleges that if his legal theory and calculation of damages prevailed, Baker Defendants would be liable for $589,081.82, which would result in higher proposed attorneys' fees under the percentage-of-the-fund method. (ECF No. 175 at 11). Under the proposed approach, after subtracting other fees and costs requested, class members under the Baker Defendant agreement will receive about 54.3% of their alleged unpaid wages. (*Id.*). This is in line with other decisions in the Sixth Circuit and would benefit the members of the class. *See Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (explaining that the average recovery in class actions is 7-11% of claimed damages).

### 2. Value of Service

Currently, Plaintiff's Counsel's lodestar for the Precision Defendants and Baker Defendants together is $450,142 for a total of 814.1 hours of work as of August 26, 2022. (ECF Nos. 175 at 12, 176 at 12). Given that the claims against the Defendants were the same, nearly all of Plaintiff's Counsel's work in this case was related to both sets of defendants, making it difficult to distinguish the number of hours dedicated individually to each group of defendants. Plaintiff's Counsel suggested prorating the lodestar between the two settlements based on the value of the settlements. (*Id.* at 13). Therefore, roughly 37% of the lodestar, or $166,553, would be attributable to the proposed settlement with the Precision Defendants, and roughly 63% of the lodestar, or $283,589, would be attributable to the Baker Defendants. (*Id.*).

While this Court accepts Plaintiff's Counsel's prorated approach to disaggregating the lodestar between the two cases in this matter, Plaintiff's Counsel did not disaggregate the hours worked between the two cases, such that this Court could crosscheck the percentage-of-the-fund attorneys' fees proposal against a lodestar representative of the *actual* amount of time worked on

12

addressing the Baker Defendants' claims. This Court acknowledges, however, that these cases are unique. Because of the extreme similarities across defendant groups, it is difficult for Plaintiff's Counsel to disaggregate the hours worked on each case. Plaintiffs should be advised, however, that this Court prefers counsel provide a disaggregation of hours worked on multi-party case when calculating the lodestar and are encouraged to provide such disaggregation in the future.

Plaintiff's Counsel requests a total of $180,142, across both settlements, less than their lodestar, which strongly weighs in favor of granting attorneys' fees. *See Myers v. Memorial Health System Marietta Memorial Hospital*, No. 15-cv-2956, 2022 WL 4079559, at *6 (S.D. Ohio Sep. 6, 2022) (concluding that an attorneys' fee that was $1,033,933 less than their lodestar weighed heavily in favor of approving the fee request); *Kritzer*, 2012 WL 19545122, at *10 (finding a proposed attorneys' fee of less than the lodestar calculation reasonable). In fact, awards of common-fund attorney fees in amounts two or three-times greater than the lodestar have been found reasonable. *See Johnson v. Midwest Logistics Systems, Ltd.*, 2:11-cv-1061, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013) (concluding a lodestar multiplier of 2.25 was reasonable); *Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a multiplier of 3.06 in an Employee Retirement Income Security Act case).

Finally, Plaintiff's Counsel alleges that their hourly rates have been approved in other cases by this Court, with the sole exception of Mr. Kimble who recently raised his hourly rate from $550 to $600 to reflect his experience in pizza delivery driver cases. *See Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2022 WL 3048376, at *5 (S.D. Ohio Aug. 2, 2022); *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 WL 1966062, at *6 (S.D. Ohio May 17, 2021); *Arp v. Hohla & Wyss Enterprises, LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *7 (S.D.

13

Ohio, Nov. 5, 2020). Despite the increase in Mr. Kimble's hourly rate, this new amount reflects the increase in value Mr. Kimble brings to the litigation from his years of experience on pizza delivery driver cases and weighs in favor of approval of the requested fees.

*3. Whether Services Undertaken on Contingency Fee Basis*

Third, Plaintiff's Counsel undertook representation on a one-third contingency fee agreement and the notice sent to class/collective action members informed them of this arrangement. (ECF No. 175 at 12). In doing so, Plaintiff's Counsel "undertook the risk of not being compensated" at all. *O'Bryant v. Pillars Protection Servs., LLC*, No. 2:19-cv-1354, 2020 WL 7486712, at *6 (S.D. Ohio Dec. 17, 2020) (quoting *Kritzer*, 2012 WL 1945144, at *9). As Plaintiff's Counsel has not been compensated since the beginning of this litigation, this factor weighs in favor of this Court granting an award of attorneys' fees. *See Feiertag v. DDP*, No. 14-cv-2643, 2016, WL 4721208, at *7 (S.D. Ohio Sep. 9, 2016).

*4. Society's Stake in Attorneys' Fees*

Society benefits when attorneys take on class actions that ensure "claimants with small claims may pool their claims and resources." *Waters*, 2022 WL 3048376, at *5. This benefit is "particularly acute in wage and hour cases brought on behalf of minimum wage workers." *Id.* (quoting *Arp*, 2020 WL 6498956, at *6). There exists a "public interest" in ensuring that attorneys who represent clients in class actions are adequately compensated, so that attorneys will continue to take on such cases in the future. *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011). Like *Waters*, this class and collective action allows low-wage workers to recover unpaid wages, many of whom would likely not have been willing or able to pursue their claims individually. *See Mullins*, 2019 WL 275711,

at *5. Accordingly, this factor also weighs in favor of awarding counsel their proposed percentage-of-the-fund amount.

### 5. Complexity of Litigation

As previously discussed, this case was a complex wage and hour class and collective action with unresolved legal questions and substantial factual investigation, to which Plaintiff's Counsel brought unique expertise. This factor also weighs in favor of awarding Plaintiff's Counsel the percentage-of-the-fund amount.

### 6. Professional Skill of Counsel

The attorneys in this matter were highly skilled. Plaintiff's Counsel has prosecuted many wage-and-hour claims and had a "heightened difficulty of navigating a lawsuit that contained elements of a FLSA collective action and a Rule 23 class action." *Graham v. Chumleys of Columbus, LLC*, No. 2:15-cv-136, 2016 WL 11787458, at *7 (S.D. Ohio Mar. 23, 2016) (quoting *Dillworth*, 2010 WL 776933 at *8).

### E. Expenses and Administration Fee

Plaintiff's Counsel seeks a reimbursement award of $10,880.93 for the Claim Administrator's fees and $1,422.30 for expenses. (ECF No. 175 at 16). Plaintiff's Counsel alleges these fees cover settlement notices, setting up Qualified Settlement Funds (QSFs), distributing checks, filing fees, service of process, and Plaintiff's portion of the mediator fee. (ECF No. 175 at 15). Under the common fund doctrine, Plaintiff's Counsel will be entitled to reimbursement expenses that were reasonable and necessary in resolving a case. *Mullins*, 2019 WL 275711, at *5 (approving request for $6,310.55 in expenses resulting from filing fees, mediation costs, and class notice costs). These expenses are reasonable as they are in line with expenses and administration fees incurred in similar litigation. *See e.g., Brandenburg*, 2019 WL

6310376, at *7 (holding that $15,266.88 in litigation expenses were reasonable and necessary in litigating and resolving a wage and hour pizza delivery driver case).

### F. Class Representative Service Award

Finally, the Court approves a $5,000 service award for Plaintiff (ECF No. 175 at 16). Neither class members nor Defendants object to the requested award. Courts recognize and grant "incentive awards [as] efficacious ways of encouraging member[s] of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hogan v. Cleveland Ave Rests. Inc.*, No. 2:15-CV-2883, 2019 WL 6715976, at *6 (S.D. Ohio Dec. 10, 2019) (quoting *Hadix v. Johnson*, 322 F. 3d 895, 897 (6th Cir. 2003)). Plaintiff argues that this award is warranted because the Plaintiff assumed substantial risk in advocating for the Class and Collective. (ECF No. 175 at 16). Plaintiff will also receive a service award of $5,000 in the Precision Defendants settlement, which together brings Plaintiff in line with what is typically awarded in these cases. (*Id.*); *see also Chrismon v. Meadow Greens Pizza*, No. 5:19-cv-155BO, 2020 WL 3790866, at *6 (listing pizza delivery driver cases granting a $10,000 service award for the named plaintiff). Comprising about 1.2% of the global settlement funds, the two service awards do not significantly reduce the award to other class members, so there is no concern that such an award would be to the detriment of the class and collective members.

### III. CONCLUSION

For the foregoing reasons, this Court **GRANTS** the Motion for Final Settlement Approval with the **Baker Defendants** for a total settlement amount of **$510,000**, including the request for attorneys' fees amounting to **$170,000**, Claim Administrator fee reimbursement of **$10,880.93**, expenses of **$1,422.30**, and a class representative award of **$5,000**, and orders that this case be **DISMISSED WITH PREJUDICE**. The difference between the total settlement

amount ($510,000) and the total fees awarded ($187,303.23)—**$322,696.77**—will be dispersed to the Class Members as outlined in the settlement agreement. (ECF No. 175-1)

As outlined in the settlement agreement, within **thirty (30) days** of Defendants making the first round of payments to the class, the parties will submit a stipulation dismissing, with prejudice, the Baker Defendants from the lawsuit. (ECF No. 175-1 at 12). This Court will retain jurisdiction over this action. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: October 31, 2022**